FREIRIA HERMANOS ET AL., Petitioners,

*v.*

MIGUEL FERNANDEZ, Respondent.

---

San Juan, Bankruptcy, No. 183.

INSOLVENCY VEL NON.

Bankruptcy—Agency—Death of Principal.
    1. Under § 1640 of the Civil Code, "what has been done by the

Hermanos v. Fernandez.

agent, when he was not aware of the death of the principal, . . . shall be valid and of effect with regard to third persons who may have contracted with the agent in good faith," and where creditors would have looked to the principal, had he lived, for the amount of their claims they cannot throw the agent into bankruptcy.

Bankruptcy—Probate Proceedings—Jurisdiction.

2. Proceedings in bankruptcy cannot be begun against the estate of a deceased person; and as probate proceedings cannot be had in a Federal court in bankruptcy, the court has no jurisdiction to determine whether or not one is the heir of a deceased person, as the court cannot do indirectly what it has not the power to do directly.

Bankruptcy—Wage Earner—Burden of Proof.

3. One who is dependent for a living upon the result of his individual efforts, without the aid of property or capital, is a wage earner, and cannot be adjudicated an involuntary bankrupt; and where the evidence tends to show that one is a wage earner, the burden of showing the contrary is on the petitioning creditors.

Opinion filed February 13, 1917.

------

*Mr. E. H. F. Dottin* for petitioners.

*Mr. Harry F. Besosa* for respondent.

HAMILTON, Judge, delivered the following opinion:

The petition in involuntary bankruptcy was filed October 19, 1916, and after different pleadings the case came on for trial December 22 before a jury on the question of insolvency. By consent, however, the case was taken from the jury and the matter submitted to the court upon the evidence taken.

That showed that during 1915 one José Fernandez, father of the alleged bankrupt, purchased and began operating a store

Hermanos v. Fernandez.

at Naguabo. After awhile Fernandez fell in bad health, and had his son, Miguel Fernandez, come and act as clerk. On May 2, 1916, he executed a full power of attorney to Miguel, and shortly afterwards left for Spain for the benefit of his health. There was no change in the form of the business, and Miguel continued it in the name and as the representative of his father, José Fernandez. José Fernandez died in Spain on August 19, 1916. Meanwhile, no one in Porto Rico knew this fact. The business did not prosper, and on September 10 E. Bird Arias attached it, and the same thing was done on the 23d by the Fajardo Sugar Growers' Association. These accounts and all others were shown by evidence to have been contracted largely by Miguel, in the name and as a part of the current business of José Fernandez. The store was closed by the attachment of September 23. About that time Miguel learned of the death of his father. On October 19, as above stated, the petitioners filed their petition in this court against Miguel Fernandez, seeking to have him declared a bankrupt.

1. It is sought to have Miguel Fernandez subjected upon the ground that the debts were contracted by him. It is not altogether clear that a sufficient amount in value was contracted by Miguel, but, at all events, if this were so, it is clearly enough shown by all the evidence that the debts were so contracted as a part of the going business of José Fernandez. Some of the petitioners spoke of a partnership, or of Miguel succeeding to the business, but the evidence does not bear out either contention. The origin of these accounts and all others was the business carried on by José Fernandez himself. Miguel held the power of attorney of his father, and whatever orders he gave were expressly or impliedly in the name of his father, and all

business accounts were continued in the name of José Fernandez. The inference seems to be that Miguel was only a wage earner, carrying on the business of his father for the father's benefit, in anticipation of his return. There seems to be no doubt that, if José Fernandez had returned, the creditors herein would have looked to him and him only for payment of their debts. The results of the agency of Miguel were not, in point of law, ended with the death of his father. Section 1640 of the Civil Code provides that "what has been done by the agent, when he was not aware of the death of the principal, . . . shall be valid and of effect with regard to third persons who may have contracted with the agent in good faith." There seems to be no reason for finding that Miguel had any "intervention," as it is commonly expressed in Porto Rico, except on behalf of his father, José Fernandez.

2. But it is contended that, as José Fernandez did not return, and as he died and his son carried on the business, the son should be held responsible for the debts which he had himself contracted. It is true that "agency is terminated . . . by death, interdiction, bankruptcy, or insolvency of the principal. . . ." Civ. Code, § 1634. Section 969 of the Civil Code provides that "through an acceptance, pure and simple, or without benefit of inventory, the heir shall be liable for all the charges on the estate, not only with the property of the same, but also with his own." The special proceedings, corresponding to probate proceedings in the states, contemplate that if an heir goes into possession without more he becomes responsible for the debts of the decedent. Such facts, however, are not triable in the Federal court in bankruptcy. Valid proceedings cannot be begun against the estate of a deceased

Hermanos v. Fernandez.

person, but only against the person and property of the living. Re Hicks, 107 Fed. 910. It would not be good practice for this court to entertain probate proceedings indirectly when it has not the power to do so directly. Aran v. Fritze, 3 Porto Rico Fed. Rep. 509.

3. The facts seem to show that, while Miguel was in charge of the business of his father, it was only as a representative, and that within the purview of the Bankruptcy Act he was a wage earner, and, so far as appears, did not owe debts to the amount of $1,000. C. C. Taft Co. v. Century Sav. Bank, 72 C. C. A. 671, 141 Fed. 369. This exemption applies to those who are dependent for a living upon the result of their individual effort, without the aid of property or capital. First Nat. Bank v. Barnum, 160 Fed. 245. There is nothing in the evidence to show that Miguel had any interest in the business, or had succeeded his father, or had any property of his own invested. He seems to have been working for wages before he came to help his father, and has been working for wages since. The burden of showing the contrary is on the petitioning creditors. Re Burgin, 173 Fed. 726; Flickinger v. First Nat. Bank, 76 C. C. A. 132, 145 Fed. 162.

As this court has no jurisdiction of a wage earner, and defendant herein did not owe the debts claimed, it is unnecessary to discuss whether an act of bankruptcy has or has not been committed.

It follows that the issues submitted to the court must be found for the defendant, and that, as a consequence, the petition in bankruptcy must be dismissed.

It is so ordered.